UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

Civil Action 2:13-md-2433
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

**This document relates to:**

*David Freeman v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-01103

*Tina Dowdy v. E. I. du Pont de Nemours and Company*, Case No. 2:14-CV-00185

*Jeanne Baker v. E. I. du Pont de Nemours and Company*, Case No. 2:14-CV-00094

## CASE MANAGEMENT ORDER NO. 16

This matter is before the Court on DuPont's Motion to Stay. (ECF No. 4353.) The Court denied that motion at the in-person status conference held on March 23, 2016. This Order memorializes and expounds on that ruling.

### I.

In DuPont's Motion to Stay, it asks the Court to stay the trial of the above referenced cases (*Freeman*, *Dowdy*, and *Baker*), which are the final three bellwether trials in this MDL. The first bellwether trial, Carla Marie Bartlett's case, was tried in September 2015, and resulted in a verdict in Mrs. Bartlett's favor on her negligence claims and against her on her punitive damages claim. DuPont filed a Motion for Judgment as a Matter of Law and for a New Trial, which this Court denied. (ECF No. 4306.) Many of the issues DuPont addressed in its post-trial motion

had been brought before the Court on numerous occasions in pretrial and trial motions, giving the Court several opportunities to review its conclusions. DuPont timely appealed this Court's decision. DuPont now asks this Court to stay the bellwether trials until the United States Court of Appeals for the Sixth Circuit has ruled upon its appeal, contending that resolution of that appeal will clarify many of the issues of law and evidence that are before the Court in this MDL.

At the in-person status conference, Plaintiffs' counsel requested permission to oppose DuPont's Motion to Stay, arguing that the timing of the motion is concerning to them. While they "agree that there are instances when . . . trials should be stayed pending appeal," these bellwether cases, Plaintiffs' maintain, do not present one of those instances. (Transcript of March 23, 2016 In-Person Conf. at 14.) Plaintiffs further contend, *inter alia*, that the parties and the Court anticipated just such a situation as the one currently before the Court and agreed long ago to pursue a bellwether trial process in an attempt to gather information and potentially reach a global settlement regardless of which side prevailed at the first bellwether trials. Plaintiffs' counsel stated:

> But we entered this bellwether process knowing somebody was going to win, and somebody was going to lose in the process of the motions. Somebody was going to win, and somebody was going to lose motions *in limine*. Nothing about this result, except that [DuPont] lost, is surprising [to DuPont].

*Id*.

This Court informed Plaintiffs' counsel that it was unnecessary to oppose the Motion since the Court had already decided to deny it. The Court explains that decision in more detail below.

## II.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for

2

counsel and for litigants," *Landis v. North American Company*, 299 U.S. 248, 254–55 (1936), and that the entry of such an order ordinarily rests with the sound discretion of the District Court." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (parallel citation omitted). "Given this, however, it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Id.*

"The party seeking a stay of proceedings has the burden of establishing both the 'pressing need for delay' and 'that neither the other party nor the public will suffer harm from entry of the order.'" *Webber v. J-W Wireline Co.*, No. 2:15-cv-02084, 2015 U.S. Dist. LEXIS 142504, *3–4 (S.D. Ohio Oct. 20, 2015) (quoting *Ohio Envtl. Council*, 565 F.2d at 396). *See also Landis*, 299 U.S. at 255 (stating that the movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else"). While "[t]here is no precise test in this Circuit for when a stay is appropriate . . . district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 U.S. Dist. LEXIS 25358, at *7 (S.D. Ohio Oct. 21, 2005) (citing, *inter alia*, *Landis*, 299 U.S. at 255).

### III.

The Court starts with the most important aspect of the issue before it: The rights of the parties in this MDL to have a determination without undue delay. This case was born fifteen years ago in a 2001 state court class action that between DuPont and a class of nearly 80,000 persons residing in six water districts whose drinking water had been contaminated with perfluorooctanoic acid ("C-8") that was discharged from DuPont's Washington Works Plant

3

near Parkersburg, West Virginia. *See Leach v. E. I. Du Pont de Nemours & Co.*, No. 01-C-608 (W. Va. Cir. Ct. Wood County Aug. 31, 2001). The *Leach* Case resulted in a settlement, which provided that the class plaintiffs would forgo bringing individual personal injury and wrongful death suits against DuPont in exchange for DuPont's concession of general causation if a special epidemiological study proved that it is more likely than not that there is a link between exposure to C-8 and the class member's disease. (*Leach* Settlement Agreement "S.A.," ECF No. 820-8.) In 2012, after a seven-year, world-class epidemiological study was concluded, there were Probable Link Findings issued for six human diseases, *i.e.*, a Science Panel determined that "it is more likely than not that there is a link between exposure to C-8 and [one of these six diseases] among Class Members." (S.A. § 1.49.) The over 3,500 plaintiffs in this MDL allege that they suffer from or administer the estate of an individual who died from one of the six diseases for which a Probable Link Findings issued. (*See* Dispositive Motions Order No. 12 at 1–8, ECF No. 4306) (providing a full background of the Science Panel Study).

Understanding the gravity of this case to all parties involved, a bellwether process was supported by the parties and the Court since the earliest stages of this MDL. With the Court's approval and direction, the parties developed and engaged in a selection process for the bellwether trials to which all discovery was directed. It was envisioned that, regardless of the results of the jury verdict (whether it would have necessitated DuPont or the bellwether plaintiff to appeal) the Court would press on with the anticipated bellwether trials.

To DuPont's concern, the Court recognizes that some issues on appeal may impact the cases that are not yet tried in this MDL. This is one reason the Court purposefully chose to begin the forty cases that will be tried in 2017 in April 2017 when the Sixth Circuit most likely will have ruled on DuPont's appeal. However, the next three trials are meant not only for

determination of the rights and obligations of the litigants, but for a special purpose that all parties and this Court previously recognized – information gathering that may lead to a global settlement.  *See* Eldon E. Fallon, Jeremy T. Grabill, Robert Pitard Wynne, *Bellwether Trials In Multidistrict Litigation* at 2332, Tulane Law Review (2008) ("The ultimate purpose of holding bellwether trials in [In re Propulsid Products Liability Litigation (MDL No. 1355) and In re Vioxx Products Liability Litigation (MDL No. 1657)] was not to resolve the thousands of related cases pending in either MDL in one 'representative' proceeding, but instead to provide meaningful information and experience to everyone involved in the litigations."); Alexandra D. Lahav, *Bellwether Trials*, at 577–78, The George Washington Law Review (2008) ("Judges currently use bellwether trials informally in mass tort litigation to assist in valuing cases and to encourage settlement.").

Indeed, it is the normal process for MDL courts to continue to try bellwether cases while the losing parties from the first bellwether trials appeal.  For example, in *In re Levaquin Products Liability Litigation*, MDL No. 1943, which was centralized in the District of Minnesota, the first bellwether trial took place in November 2010, and resulted in a jury verdict in favor of the plaintiff in the amount of $700,000 in compensatory damages and $1,115,000 in punitive damages.  The defendant's motion for post-trial relief, which was directed at decisions of law and evidentiary rulings similar to DuPont's post-trial motion in the instant MDL, was denied and the defendant appealed to the United States Court of Appeals for the Eighth Circuit.  While that appeal was pending, the court tried two more bellwether cases, both resulting in verdicts for the defendant.  *See In re Levaquin Prod. Liab. Litig.*, 2014 U.S. Dist. LEXIS 163777, at 11–14 (Jud. Panel on MDL Nov. 21, 2014).

Further, when presented with a request for a stay in the exact circumstances as in the case *sub judice*, another MDL court refused to grant the request stating:

> I **FIND** that a stay of the [next two bellwether] trials does not serve the interests of justice. . . . This is not the first occasion on which [the defendant] has requested that I revisit my [] ruling [on a legal issue], and on each occasion [the defendant] has failed to make a strong showing that my initial ruling was incorrect. At this time, I remain unconvinced that [the defendant] is likely to succeed on the merits of any appeal related to the [issues before the court]. Further, [the defendant] will not be irreparably injured by waiting until the last two bellwether trials conclude; however, considering the size and expense of this MDL, the plaintiffs might be injured by delaying these last two bellwether trials. Finally, the numerosity of cases within [this] MDL mandate celerity in the resolution of the bellwethers pending before me.

*In Re: C. R. Bard inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2013 U.S. Dist. LEXIS 119177 at *6–7 (S.D. W.V. Aug. 22, 2013) (denying the defendant's Motion to Stay or Alternatively to Certify for Immediate Interlocutory Appeal).

Similarly, this Court finds that celerity is mandated here, considering that the over 3,500 plaintiffs have waited fifteen years to bring the issue of DuPont's release of C-8 into their drinking water to trial (and DuPont has waited as long to present evidence that it was not negligent or reckless), and further recalling the previously agreed-upon purposes and scheduling of the bellwether trials. The Court concludes that DuPont failed to meet its burden of "establishing both the 'pressing need for delay' and 'that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396. Nor has DuPont shown "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Consequently, balancing the potential hardships to the parties and the public, the Court finds that the interests of justice here are not served by granting DuPont's request for a stay.

## IV.

For the reasons set forth above, and those stated at the in-person status conference held on March 23, 2016, the Court **DENIES** DuPont's Motion to Stay. (ECF No. 4353.)

**IT IS SO ORDERED.**

\_\_3-29-2016_____ _____
**DATE** **EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**