UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

                             Civil Action 2:13-md-2433
                             CHIEF JUDGE EDMUND A. SARGUS, JR.
                             Magistrate Judge Elizabeth Preston Deavers

This document relates to:

*David Freeman v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-1103

## DISPOSITIVE MOTIONS ORDER NO. 16

### Defendant's Motions for Summary Judgment Related to Punitive Damages

This matter is before the Court on Defendant's Motion for Summary Judgment on David Freeman's Claim for Punitive Damages (ECF No. 4320), Plaintiff's Memorandum in Opposition to Defendant's Motion (ECF No. 4330), and Defendant's Reply in Support of its Motion (ECF No. 4341.) For the reasons that follow, the Court **DENIES** Defendant's Motion.

### I.

The Judicial Panel on Multidistrict Litigation describes the over 3500 cases that make up this multidistrict litigation ("MDL") in its Transfer Order as follows:

> All the actions are personal injury or wrongful death actions arising out of plaintiffs' alleged ingestion of drinking water contaminated with a chemical, C-8 (also known as perfluorooctanoic acid (PFOA) or ammonium perfluorooctanoate (APFO)), discharged from DuPont's Washington Works Plant near Parkersburg, West Virginia. All of the plaintiffs in this litigation allege that they suffer or suffered from one or more of six diseases identified as potentially linked to C-8 exposure by a study conducted as part of a 2005 settlement ["*Leach* Settlement Agreement"] between DuPont and a class of approximately 80,000 persons residing in six water districts allegedly contaminated by C-8 from the Washington

Works Plant [("*Leach* Class")]. *See Leach v. E. I. Du Pont de Nemours & Co.*, No. 01-C-608 (W. Va. Cir. Ct. [(Wood County Aug. 31, 2001)].

(Transfer Order at 1, ECF No. 1); (*Leach* Settlement Agreement ("S.A."); ECF No. 820-8). Defendant E. I. du Pont de Nemours and Company ("DuPont") utilized C-8 as a manufacturing aid in the production of Teflon™.

The study to which the Judicial Panel refers in its Transfer Order is a unique way in which DuPont and the *Leach* Class decided to address the C-8 issue. In the *Leach* Settlement Agreement, DuPont and the *Leach* Class established a procedure to choose a panel of appropriately credentialed epidemiologists ("Science Panel") to study human disease among the particular group of individuals who were exposed to C-8 by drinking water that was contaminated with C-8 that had been discharged from DuPont's Washington Works plant into their drinking water, (*i.e.*, the *Leach* Class). *Id.* §§ 12.2.1, 12.2.2. In 2011 and 2012, after a seven year, world class epidemiological study, that cost over 20 million dollars, the Science Panel delivered Probable Link Findings for six human diseases ("Linked Diseases"). The parties defined "Probable Link" in the *Leach* Settlement Agreement as meaning that "it is more likely than not that there is a link between exposure to C-8 and a [Linked] Disease among Class Members." (S.A. § 1.49.)

Plaintiff David Freeman has lived in Cutler, Ohio, since 1993. The water to his residence was supplied from the Little Hocking Water Association ("LHWA") water district, a named district in the *Leach* Settlement Agreement. In 2000, when Mr. Freeman was forty years old, he was diagnosed with testicular cancer, a Linked Disease. Mr. Freeman "underwent a right radical orchiectomy (inguinal approach)," on April 5, 2000. (Bahnson Report at 3, ECF No. 4311-1.) Pathology revealed that his "right testicular tumor was a teratoma with both mature and

2

immature elements: *i.e.*, a malignancy. Additionally, peripheral to the tumor were some seminiferous tabules demonstrating intratubular germ cell neoplasia of the unclassified type." *Id.* at 4. "After the surgical extraction of his right testis and teratoma, Mr. Freeman underwent a ten-year follow-up protocol which involved frequent observation via x-rays, CT scans, and tumor markers." *Id.*

Mr. Freeman presents evidence that he is a member of the *Leach* Class and that his testicular cancer was specifically caused by his ingestion of C-8 that DuPont released from its Washington Works plant. *Id.* at 7 ("David Freeman's exposure to C-8 in his drinking water was a substantial contributing factor in bringing about the development of his testicular cancer."); (MacIntosh Expert Report, ECF No. 4311-3) (opining that Mr. Freeman is a *Leach* Class member). Mr. Freeman alleges that when DuPont released the C-8 from its plant it did so with a conscious disregard for the rights and safety of the people in the surrounding communities whose water supply was being contaminated with the C-8.

Through a negotiated process, the parties chose, and this Court approved, five plaintiffs whose cases would serve as bellwether trials. The first bellwether plaintiff, Carla Marie Bartlett, tried her case to a jury in September 2015. The case of the second bellwether plaintiff, John M. Wolf, was resolved. Mr. Freeman was chosen as the third bellwether plaintiff, and will be the second case to go to a jury trial. His trial is scheduled for May 31, 2016.

In its current Motion, DuPont moves for summary judgment on Mr. Freeman's claim for punitive damages. That motion is ripe for review.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

4

### III.

This Court has issued numerous decisions in this MDL. Some of the Dispositive Motions Orders ("DMOs") and a decision on a motion *in limine* ("MIL") impact the instant analysis. Indeed, both DuPont and Mr. Freeman incorporate all of the prior briefing on the punitive damages issue that has been presented to this Court in the *Bartlett* and *Wolf* cases. (*See* Defendant's Motion for Partial Summary Judgment on Punitive Damages in the Bartlett and Wolf Cases (ECF No. 2825), Plaintiffs' Memorandum in Opposition (ECF No. 3194), and Defendant's Reply (ECF No. 3557); Defendant's Motion for Judgment as a Matter of Law on Carla Marie Bartlett's Claims ("Rule 50 Motion") (ECF No. 4227), Plaintiffs' Memorandum in Opposition (ECF No. 4229), and DuPont's Reply Brief (ECF No. 4230); Defendant's Motion *in Limine* No. 26, Regarding Calculation of Punitive Damages (ECF No. 4208) and Plaintiff's Memorandum in Opposition (ECF No. 4214); and DuPont's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial and Remittitur on Plaintiff Carla Bartlett's Claims (ECF No. 151 in Case No. 2:13-CV-0170), Mrs. Bartlett's Memorandum in Opposition (ECF No. 158 in Case No. 2:13-CV-0170), and DuPont's Reply. (ECF No. 159 in Case No. 2:13-CV-0170)).

In Case Management Order ("CMO") No. 13, which is the pretrial schedule for the *Freeman* trial, this Court directed the parties to "indicate in any summary judgment or *Daubert* motion whether the Court ruled on the issue previously, whether they are moving to preserve, or whether they are asking for reconsideration because of new or different circumstances or other good cause." (CMO 13, Pretrial Schedule for Freeman Trial, ECF No. 4263.) DuPont asks for reconsideration of the Court's previous rulings on the punitive damages issue, contending that its current motion is based upon facts "which are different from the facts in *Bartlett*, [and]

5

present even further evidence of DuPont's proactive concern for the health and safety of those in the surrounding community." (DuPont's Reply at 2.) And, "to the extent the Court is not inclined to revisit that ruling on the factual record in Mr. Freeman's case, DuPont expressly preserves and does not waive its arguments and positions with respect to Mr. Freeman's punitive damages claim." *Id.* at 3.

### A. Standard for Punitive Damages

In DMO 3, the Court determined that Mr. Freeman's case will be tried under the law of Ohio. (DMO 3, Choice of Law; ECF No. 3551.) Under Ohio law, punitive damages are recoverable in a tort action when compensatory damages have already been awarded and "the actions or omissions of th[e] defendant demonstrate malice or aggravated or egregious fraud." Ohio Rev. Code § 2315.21(C). An Ohio plaintiff bears the burden of establishing by clear and convincing evidence that he or she is entitled to recover punitive damages. *Id.* § 2315.21(D)(4); *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 12 Ohio St. 3d 241, 245 (1984). The "actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St. 3d 334, 336 (1987).

### B. Analysis

DuPont contends that "no reasonable jury could find by clear and convincing evidence that DuPont acted with the required mental state to warrant an award of punitive damages, and DuPont is entitled to partial summary judgment on this issue." (DuPont's Mot. at 1–2.) This Court, however, disagrees.

As Mr. Freeman correctly explains in his opposition memorandum, DuPont first raised this same argument in the context of the *Bartlett* and *Wolf* cases, under both Ohio and West Virginia law, and the Court reviewed all the same evidence and testimony cited here again by DuPont. In denying DuPont's request for summary judgment, the Court held:

> [B]elieving the Trial Plaintiff's evidence as true and drawing all justifiable inferences in their favor, a reasonable jury could find the evidence shows that DuPont knew that C-8 was harmful, that it purposefully manipulated or used inadequate scientific studies to support its position, and/or that it provided false information to the public about the dangers of C-8. If the jury came to those conclusions, it could reasonably find the evidence clearly and convincingly showed that DuPont's conscious disregard of the rights and safety of the *Leach* Class had a great probability of causing substantial harm and/or that its actions were done maliciously, wantonly, mischievously, or with criminal indifference to civil obligations. Consequently, there are genuine issues of material fact that prevent this Court from determining the punitive damages issue as a matter of law.

(DMO 7, Def.'s Mot. for Summ. J. on Punitive Damages at 10, ECF No. 4185.) DuPont provides no new argument or evidence that causes the Court to reconsider the conclusions made in DMO 7. The Court therefore, incorporates that Opinion and Order herein.

Additionally, this Court has also explicitly addressed DuPont's argument that the trial testimony of the experts presented in *Bartlett* make it impossible as a matter of law to support a punitive damages award against DuPont:

> The evidence before this Court in total, viewing it as required under Rule 50, is similar in that a reasonable jury could find that DuPont has known since the 1960s that C-8 is toxic, has known since the 1970s that it will build up, accumulate, and persist in the blood of humans exposed, has known since 1984 that C-8 was in community drinking water supplies near its Washington Works plant, knew that the "low levels" of C-8 in the water would accumulate in the blood of an individual to a level that was not being measured, did not inform the public or regulators of this knowledge, failed to utilize the best available scientific methodology to test the toxicity of C-8, had recommendations from its medical director, lawyers, epidemiologists, toxicologists, and peer review boards to stop and/or reduce the amount of C-8 released into the environment because of the known and foreseeable risks, and continued to increase C-8 releases in significant amounts.

> Based on the foregoing, and the additional evidence presented at trial and not specified *supra*, the Court finds that "reasonable minds can differ as to whether [DuPont] was aware [its] act[s] had a great probability of causing substantial harm. . . . [and] that sufficient evidence [has been] presented revealing that [DuPont] consciously disregarded [Mrs. Bartlett]'s rights or safety." *Preston v. Murty*, 32 Ohio St. 3d at 336. Accordingly, a reasonable jury would have a legally sufficient evidentiary basis to find for Mrs. Bartlett on her punitive damages claim.
>
> The Court emphasizes that it has merely determined that there is sufficient evidence for the jury to consider punitive damages. The Court makes no finding as to whether Mrs. Bartlett is entitled to such damages. If, and only if, the jury finds in favor of Mrs. Bartlett, the same jury will decide if she is entitled to punitive damages, and if so, an appropriate amount.

((DMO 11, Def.'s Mot. for J. as a Matter of Law on Punitive Damages at 14, ECF No. 4235.) The evidence referred to in this decision, DMO 11, is the same presented by Mr. Freeman. DuPont provides no new argument or evidence that causes the Court to reconsider the conclusions made in that Opinion and Order. The Court therefore, incorporates DMO 11 herein.

Finally, the Court addressed the punitive damages issue in DMO 12, wherein it referred back to MIL 6, a decision it made on DuPont's Motion *in Limine* No. 26 in the *Bartlett* case. (MIL 6, Calculation of Punitive Damages, ECF No. 4239.) In MIL 6, the Court reviewed what DuPont had referred to as "post-injury" evidence, explaining that this evidence was relevant to Mrs. Bartlett's negligence claim as well as her punitive damages claim. In its current motion, DuPont contends that it moves for reconsideration of the Court's prior rulings because its motion is based upon Mr. Freeman's "specific diagnosis and exposure history, including his 2000 diagnosis with testicular cancer, his participation starting in August 2005 in a bottled water program sponsored by DuPont, and his residence in the LHWA water district, which began to use a Granular Activated Carbon filtration system, paid for by DuPont, in 2007, reducing C-8 concentrations in Mr. Freeman's drinking water to essentially non-detectable levels." (DuPont's

8

Reply at 2) (citing DuPont's Mot. at 2.) DuPont concludes that "[t]hese facts, which are different from the facts in *Bartlett*, present even further evidence of DuPont's proactive concern for the health and safety of those in the surrounding community." *Id.* In other words, DuPont contends that it has submitted additional evidence to support its position.

However, even if the Court accepts DuPont's arguments, it does not support the proposition that the issue before the Court is different now than it was in *Bartlett*. That is, the issue before the Court in the *Bartlett* case was whether Mrs. Bartlett could offer evidence of DuPont's conduct that occurred after Mrs. Bartlett's 1997 kidney cancer diagnosis. That is the same issue before the Court now. Thus, the analysis in MIL 6 is equally applicable:

> DuPont's position in this litigation is that, "rather than any malice or disregard for safety, the evidence instead shows that DuPont exhibited a *proactive concern* for safety in its use of [C-8] at its Washington Works plant, consistently going beyond the regulatory requirements and the typical conduct of most chemical companies." (DuPont's Mot. for Summ. J. on Punitive Damages at 1–2; ECF No. 2825.) Mrs. Bartlett was diagnosed with kidney cancer in 1997 and underwent surgery to remove a portion of her kidney that same year. DuPont contends that because of this fact, none of its conduct after 1997 is relevant to any issue before this Court. This Court disagrees with this assessment and has so indicated in numerous opinions.
>
> The Court has explained that DuPont's post-1997 actions are relevant not to causally tie its actions to Mrs. Bartlett's 1997 kidney cancer, but to show that DuPont did not exhibit a proactive concern for safety in its use of C-8 at its Washington Works plant, and that it did have knowledge and/or an expectation that there was a likelihood of harm to the community from its release of C-8 into the drinking water. (Dispositive Motions Order ("DMO") No. 7; ECF No. 4185) (denying DuPont's Motion for Summary Judgment on Bartlett's Punitive Damages Claim); (DMO 9; ECF No. 4211) (granting in part and denying in part DuPont's Motion for Partial Summary Judgment on Bartlett's Fraud and Emotional Distress Claims); (DMO 11; ECF No. 4235) (denying DuPont's Rule 50 Motion on Bartlett's Punitive Damages Claim); (Motions *in Limine* Order ("MIL") No. 3; ECF No. 4207) (granting in part and denying in part DuPont's MIL 15, To Exclude Any Statement or Suggestion that Cattle Disease or Cattle Deaths Have Been or Are Caused By C-8); (MIL 4; ECF No. 4212) (granting in part and denying in part DuPont's MIL 7, To Exclude Any References to the Weinberg Group, as Well as its Work Involving Ephedra, Fen-Phen, Tobacco, or Agent Orange).

(MIL No. 6 at 7–8.) This analysis is equally applicable here.

To avoid application of this analysis, DuPont highlights testimony from expert witness testimony from the *Bartlett* trial, stating:

> [O]ne of the same experts who Mr. Freeman has designated, Dr. Michael Siegel, acknowledged that numerous internal DuPont documents from the relevant time period demonstrate that DuPont did not believe that any harm to human health would occur at the low levels of C-8 that were reaching the community.

(Def.'s Mot. at 3.) DuPont highlights testimony of Dr. Siegel that it contends reflects that DuPont did not act with malicious intent. Of course, Mrs. Bartlett disagrees as to the import of the testimony cited by DuPont. Yet, even if the evidence reflected what DuPont suggests, it does not mean that the plaintiffs have produced no evidence of malicious intent. It merely shows that there is evidence that could be reasonably interpreted as showing DuPont acted with a conscious disregard for the rights and safety of the community that had a great probability of causing substantial harm, and there is also evidence that could be reasonably interpreted as showing that DuPont did not act with this type of conscious reckless disregard. At the summary judgment stage, Mr. Freeman is not required to prove his claim but instead to present evidence from which "a reasonable jury could return a verdict" in his favor. The evidence presented here is a quintessential example of evidence that "presents a sufficient disagreement to require submission to a jury [and] is [not] so one-sided that one party must prevail as a matter of law.'" *Anderson*, 477 U.S. at 251-52.

## IV.

Based on the foregoing, the Court finds that Mr. Freeman has raised guniune issues of material fact as to whether DuPont's conduct exhibited a conscious disregard for the rights and safety of the community members of the Little Hocking water district that had a great probability

of causing them substantial harm. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on David Freeman's Claim for Punitive Damages. (ECF No. 4320.)

  **IT IS SO ORDERED.**

\_\_\_4-29-206_____     _____
**DATE**           **EDMUND A. SARGUS, JR.**
               **CHIEF UNITED STATES DISTRICT JUDGE**